IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| PATRICIA ANN TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:15-cv-448-TMP |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.    Introduction

The plaintiff, Patricia Ann Taylor, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").   Ms. Taylor timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. Taylor was 50 years old at the time of the Administrative Law Judge's ("ALJ's") decision, she has a limited education, and is able to communicate in

English.  (Tr. at 33, 332).  She completed the tenth grade.  (Ex. 6E, p. 2).  Her past work experiences are as an upholstery seamstress, sewing machine operator, and kitchen helper in a nursing home.  (*Id*.)  Ms. Taylor claims that she became disabled on December 2, 2011, due to chronic obstructive pulmonary disease ("COPD"), a heart valve defect, osteoporosis, carpal tunnel syndrome, shoulder pain from a broken clavicle (collarbone), cervical disc bulges, and "all-over" pain.  (Tr. at 137, 332).[1]

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If she is, the claimant is not disabled and the evaluation stops.  *Id*. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a

---

[1]     In the brief supporting the Commissioner, counsel refers to allegations of obesity; however, this appears to be a clerical error as Ms. Taylor has apparently been significantly *under*weight over the past several years, having weighed as little as 98 pounds, and no more than 110 pounds, at a height of 5'6" or 5'7", according to the medical records.

claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the

claimant's age, education, and past work experience, in order to determine if she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Taylor has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision.   (Tr. at 34).   She determined that Ms. Taylor has not engaged in substantial gainful activity since the alleged onset of her disability.   (Tr. at 22).   According to the ALJ, Ms. Taylor's COPD, cervical disc disease, and osteoporosis of the left clavicle are considered "severe" based on the requirements set forth in the regulations.   (*Id.*)   She further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. at 26).   The ALJ found Ms. Taylor's allegations concerning the intensity, persistence and limiting effects of the symptoms to be "not entirely credible."   (Tr. at 28-32).   The ALJ also gave "little weight" to the treating physician's opinion regarding Ms. Taylor's capabilities, and

assigned "great weight" to the opinion of a consulting physician, Dr. Bernard Simieritsch. (*Id.*). She determined that the plaintiff has the residual functional capacity to perform unskilled light work with the following limitations: that she can frequently lift or carry 10 pounds, and up to 20 pounds occasionally; stand or walk in combination, with normal breaks, for at least six hours during an eight-hour workday; sit, with normal breaks, for up to eight hours during an eight-hour workday; frequently balance, stoop, kneel, crouch, and crawl; occasionally reach at shoulder level and perform push/pull movements with her left upper extremity; frequently perform fine and gross manipulations bilaterally. The ALJ further found that the claimant should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibration; avoid concentrated exposure to pulmonary irritants including fumes, dusts, odors, gases, and areas of poor ventilation; avoid exposure to industrial hazards including working at unprotected heights and working in close proximity to moving dangerous machinery. (Tr. at 27-28).

According to the ALJ, Ms. Taylor is unable to perform any of her past relevant work, and she was a "younger individual" at the date of alleged onset but had since attained the age of 50 and became an individual closely approaching advanced age. (Tr. at 32-33). She determined that "transferability of skills is not material to the

determination of disability" prior to age 50, and that the claimant, at age 50, does not possess transferable skills.   (Tr. at 33).   The ALJ found that Ms. Taylor has the residual functional capacity to perform a significant range of light work.   (Tr. at 25). Even though Plaintiff cannot perform the full range of light work, the ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as fitting room attendant, store facility rental clerk, and cafeteria attendant.   (Tr. at 33-34).   The ALJ concluded her findings by stating that Plaintiff is "not disabled" under the Social Security Act.   (Tr. at 34).

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.* "The substantial evidence standard permits administrative decision makers to act

with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.    Discussion

Ms. Taylor alleges that the ALJ's decision should be reversed and remanded because, she asserts, the ALJ failed to give proper weight to the opinion of her treating physician, Farouk Raquib. (Doc. 9, p. 9). Plaintiff contends that the ALJ failed to properly weigh the opinion of Dr. Raquib, who opined that Ms. Taylor would not be able to work to the degree that she could maintain a full-time job. (Tr. at Exh. 12F). The Commissioner has responded that the opinion of Dr. Raquib

was properly assessed as being unsupported by and inconsistent with other evidence in the record, including his own treatment notes.   (Doc. 14, pp. 6-12).

### A.   Treating Physician's Assessment

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted).   The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.   *See* 20 C.F.R.   §§ 404.1527(d), 416.927(d).   "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) . . . was conclusory or inconsistent with the doctor's own medical records."   *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. *See also* 20 C.F.R. § 404.1527(d)(1)("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

The court considers the ALJ's decision to accord "little weight" to Dr. Raquib's opinion. Dr. Raquib is a neurologist at Winfield Family Medical Clinic who treated the claimant regularly and frequently from January 2010 through December 2012 for a variety of complaints, including chest pain and shortness of breath, shoulder and joint pain, and pain radiating from her cervical discs. (Tr. at

254-311, 339-364).   In April of 2010, Dr. Raquib noted that she had "radicular symptoms" in her left arm from the "old fracture and dislocation of the left clavicle and osteoporosis," and he noted upon physical examination "the deformity of the lateral third of the left clavicle."   (Doc. 3F, p. 46).   In December of 2011, Dr. Raquib reported that Ms. Taylor had osteoporosis and bone pain connected with her clavicle.   (Exh. 3F, p. 21).   In January of 2012, he described her as having "old clavicular fracture/dislocation and chronic left clavicular pain."   In May of 2012, he reported that she had "chronic left clavicular pain" as well as chronic pain in the left chest wall that was triggered by left shoulder movement.   (Exh. 4F, pp. 4-5). Although her treatment for the clavicle fracture in 2008 from Dr. Allen, a general surgeon, was considered to be "conservative," the records indicate that the reason Taylor received conservative treatment was because she had no insurance and wanted to try to avoid surgery.   (Exh. 3F, p. 49; Exh. 1F, p. 3).[2]   Dr. Raquib noted in 2010 that Taylor's pain had "increasingly gotten worse" since the clavicle fracture in 2008, and that she experienced "pain with range of motion, particularly with abduction and rotation."   (Doc. 3F, p. 49).   A radiologist noted in January 2010 that

---

[2]       Treatment notes from Dr. White at the Tupelo Bone and Joint Clinic on July 10, 2008, indicate that the Plaintiff did not get the follow-up treatment that was recommended after her shoulder injury because a Dr. Smith "would not see her without $250." A treatment note dated July 24, 2008, indicates that the Plaintiff was "wanting to get by without surgical intervention," but the doctor "wasn't sure she could get by with this."   (Exh. 1F, p. 3).

Taylor's "bone mineral density is severely decreased" in the clavicle.   (Doc. 3F, p. 51).   Accordingly, Dr. Raquib's observations about the Plaintiff's shoulder pain is both consistent with his own records and is supported by other evidence in the record.

Ms. Taylor's complaints of pain arise not only from her clavicle injury, but also from her COPD.   The result of chest x-rays taken in February of 2013 to examine a "spot on lung" showed a "subtle 2.5 cm opacity in the left midlung" which was determined to be either "artifact, a small focus of resolving pneumonia, or a lesion with thin wall and central cavitation."   (Exh. 13F, p. 17).   Further x-rays or a "chest CT. with IV contrast" were suggested as a follow-up, but additional tests apparently were never conducted.   (*Id.*).   Ms. Taylor's most recent lung function test, in March of 2013, showed "minimal obstructive lung defect," but noted that "more detailed pulmonary function testing" may be useful.   (Exh. 13F, p. 20). Even Dr. Simieritsch recommended that she undergo a pulmonary stress test and "PFT to assess her lung disfunction."   (Exh, 7F, p. 8).   It does not appear that she underwent further pulmonary tests.   While the record contains limited information regarding the Plaintiff's lung function, there is sufficient evidence in the record to demonstrate that Dr. Raquib's opinion is supported by other evidence and is consistent with his own treatment notes.

Similarly, records of objective medical tests indicate that Ms. Taylor had bulging discs at the C4-C5 level and at the C5-C6 level and minimal scoliosis of the cervical spine, with slight facet arthritic changes.   (Exh. 3F, pp. 46, 52).   While the cervical disc problems do not appear to be major, it cannot be said that Dr. Raquib's opinions regarding the Plaintiff's neck pain are unsupported or contradicted by the record.

For all of these reasons, the ALJ's decision to give the treating physician's opinion "little weight" is not supported by "good cause."   Dr. Raquib provided a medical source statement in October 2012.   In that statement supporting Taylor's application for disability benefits, Dr. Raquib stated that Ms. Taylor's pain was "present to such an extent as to negatively affect adequate performance of daily activities or work," that working would increase pain "to such an extent that bed rest and/or medication is necessary," and that her medical condition would cause her to miss work "more than 4 times a month."   (Tr. at 366).   He further stated that she would need to lie down during working hours and would need a sit/stand option three to four times per day, for 15 to 20 minutes each time.   (Exh. 12F, pp. 2 - 8). Because the ALJ gave Dr. Raquib's opinion "little weight," the hypothetical questions posed to the vocational expert at the hearing did not encompass all of these limitations.   The ALJ gave "little weight" to Dr. Raquib's opinions, based upon her

determination that the doctor's opinions are "unsupported" and "inconsistent with the objective evidence."   (Tr. at 32).   Although there do exist medical reports that call into question Dr. Raquib's assessment, it cannot be said that his assessment is "unsupported."[3]   To the contrary, Dr. Raquib treated the Plaintiff for more than two years, seeing her frequently and regularly.   He was apparently the only doctor she saw with any frequency – or that she could afford to see.   The records support his findings that her shoulder never healed properly, that she experienced persistent pain from her shoulder, from her chest, and from her neck, and that she had "poor air intake" due to her COPD.[4]   She was examined in the emergency room on multiple occasions with complaints of chest pain consistent with her complaints to Dr. Raquib.   The fact that there are insufficient lab or test results to definitively describe the extent of her medical problems is explained by her lack of ability to pay for further tests and her efforts to avoid consultations and surgery that she could not afford. The fact that treatment of her medical conditions was generally conservative

---

[3]   The court notes, however, that there is no objective medical evidence to support a diagnosis of carpal tunnel syndrome.

[4]   The court takes no issue with the ALJ's credibility assessment of Ms. Taylor, finding that her decision that the Plaintiff was "not entirely credible" is supported by the fact that Ms. Taylor left her job on the alleged date of onset because she was laid off, and that she sought and received unemployment benefits for many months, attesting that she was willing and able to work.

and limited to medication was more a function of her inability to pay for other treatment, not the lack of need for treat.   The record further supports a finding that her condition has worsened over time.   Dr. Raquib's notes are internally consistent, consistent with most of the other medical records, and supported by the claimant's own testimony. The ALJ essentially discounted Dr. Raquib's assessment in favor of that of a state agency physician, Dr. Simieritsch, who examined the plaintiff once in July 2012,[5] (Tr. at 320-328), but the ALJ failed to give adequate reasons for virtually ignoring the opinion of Dr. Raquib.   Accordingly, the ALJ's weighing of the opinion evidence from Dr. Raquib is unsupported by substantial evidence and is contrary to prevailing law.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Taylor's arguments, the undersigned Magistrate Judge finds the Commissioner's decision is

---

[5]      Several aspects of Dr. Simieritsch's medical assessment are inconsistent and confusing.  For example, he described claimant as "Well/Developed/Nourished," (Tr. at 325), while noting her weight to be only 98.6 pounds at a height of 65.6 (5'6.6") and a Body Mass Index of 16.1. (Tr. at 324).   The federal CDC regards a BMI of less than 18.5 to be "underweight."   See http://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html.   Further, he noted her neck to be "supple" with a "full range of motion," without acknowledging that x-rays have confirmed disc bulging at C4-C5 and C5-C6, with mild scoliosis.   Also, his assessment of her COPD was admittedly incomplete.   While he noted that she was positive for "SOB" (shortness of breath) and recommended a "pulmonary stress test and PFT to assess her lung disfunction," he had no basis for assessing the impact of her COPD on her ability to work.   He found her to have osteoporosis, left-shoulder pain, and left chest-wall pain, but found her to have full range of motion on the left side.

not supported by substantial evidence and is not in accord with the applicable law. The Commissioner's determination failed to give appropriate consideration to the claimant's treatment physician's assessment of her pain without an adequate basis for rejecting that assessment. The determination, therefore, is REVERSED and REMANDED to the ALJ for proper consideration of the treating physician's pain assessment.

DATED the 2nd day of May, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE